IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CHARLES V. W.,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    1:22CV471
                                  )
KILOLO KIJAKAZI,                  )
Acting Commissioner of Social     )
Security,                         )
                                  )
          Defendant.              )
```

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Charles V. W., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 15; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 16 (Commissioner's Brief)). For the reasons that follow, the Court will enter judgment for the Commissioner.[1]

---

[1] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 12 at 1.)

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 428-35), alleging a disability onset date of May 1, 2015 (see Tr. 428).[2] Upon denial of that application initially (Tr. 150-73, 303-13) and on reconsideration (Tr. 174-86, 317-19), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 320-22). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 35-55.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 398-400, 621-23), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since April 24, 2020, the application date.

2. [Plaintiff] has the following severe impairments: depressive disorder, anxiety disorder, posttraumatic stress disorder, hereinafter "PTSD," degenerative disc disease in the lumbar spine, osteoarthritis in the hips, and obesity.

. . .

---

[2] Notwithstanding Plaintiff's alleged onset date of May 1, 2015, Plaintiff lacked eligibility for SSI benefits until his application date of April 24, 2020 (see Tr. 428). See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except he can frequently climb ramps and stairs. He can occasionally climb ladders, ropes, and scaffolds. He can frequently balance, stoop (i.e. bend at the waist), and crouch (i.e. bend at the knees). [He] can understand, remember, and carry out simple instructions. He can interact appropriately with the general public, supervisors, co-workers, or peers frequently during an 8 hour workday. He can respond appropriately to changes in the work setting frequently during an 8-hour workday. He can maintain attention and concentration for 2-hour segments over the course of an eight-hour workday. Time off task during the workday can be accommodated by normal breaks. He can apply commonsense understanding to carry out detailed, but uninvolved, written or oral instructions. He can deal with problems involving a few concrete variables in or from standardized solutions.

. . .

5. [Plaintiff] has no past relevant work.

. . .

9. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

> 10. [Plaintiff] has not been under a disability, as defined in the . . . Act, since April 24, 2020, the date the application was filed.

(Tr. 18-27 (space added) (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

4

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

5

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).³  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174

---

³ The Act "comprises two disability benefits programs.  The Disability Insurance Benefits program . . . provides benefits to disabled persons who have contributed to the program while employed.  [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignment of Error

In Plaintiff's first and only issue on review, he maintains that "[t]he RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence of record and failed to create a logical bridge between the evidence and the RFC." (Docket Entry 11 at 3 (bold font and single-spacing omitted).) More specifically, Plaintiff faults the ALJ for "improperly evaluat[ing] the opinion of [Qualified Mental Health Professional ('QMHP') Latonya] Moy[e]" (id. at 5), "who opined that Plaintiff was markedly limited in [multiple abilities pertaining to sustained concentration/persistence and social

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

interaction]" (id. at 4-5 (citing Tr. 1865-66)). According to Plaintiff, "[t]he ALJ's cursory analysis does not provide a legally sufficient explanation regarding why [QMHP Moye's] opinion was rejected." (Id. at 6.) Plaintiff deems the ALJ's error in this regard "harm[ful]" because, "[h]ad the ALJ properly evaluated the opinion of [QMHP] Moy[e], Plaintiff may have been found disabled." (Id. at 12.) For the reasons explained in more detail below, Plaintiff's contentions lack merit.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 428-35)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions and prior administrative medical findings or accord special deference to treating source opinions. See 20 C.F.R. § 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[7] Instead, an ALJ must determine and

---

[7] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding,

9

"articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 416.920c(b) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 416.920c(b)(1).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding. 20 C.F.R. § 416.920c(b)(2).[8] The ALJ must only address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. § 416.920c(c)(3)-(5) — when the ALJ finds two or more opinions or findings about the same

---

other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 416.913(a)(5).

[8] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 416.920c(c)(2).

10

issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 416.920c(b)(3).

On July 1, 2020, QMHP Moye completed a preprinted form entitled "Mental Impairment Questionnaire" (Tr. 1865-68), on which she opined that Plaintiff's PTSD caused him to have "marked" (defined as "serious" (Tr. 1865)) limitations in the following mental, work-related abilities:

- "maintain attention and concentration for <u>extended periods</u>" (id. (emphasis in original));

- "work in coordination with or in proximity to others without being distracted by them" (Tr. 1866);

- "perform at a consistent pace with a standard number and length of rest periods" (id.);

- "interact appropriately with the general public" (id.);

- "accept instructions and respond appropriately to criticism from supervisors" (id.);

- "get along with coworkers or peers without distracting them or exhibiting behavioral extremes" (id.);

- "respond appropriately to changes in the work setting" (Tr. 1867); and

- "travel in unfamiliar places or use public transportation" (id.).

(Id.) QMHP Moye explained those limitations by stating that Plaintiff "[wa]s often distracted by other[s] easily" (Tr. 1866), that he "shows anxiety, fear and poor relationship with individuals" (id.), and that "it[ wa]s difficult for [him] to

11

relate to others with trust, closeness and other components of relationships" (id.). In QMHP Moye's view, Plaintiff "had the limitations and restrictions outlined in the Mental Impairment Questionnaire since Nov[ember] 2019," when she began treating him. (Tr. 1868.)

The ALJ found QMHP Moye's opinions "not persuasive" (Tr. 24), and provided the following analysis supporting that finding:

> The [ALJ] finds that [QMHP Moye's] opinion is not persuasive. While the noted symptoms are documented in the record, [QMHP Moye's] opinion is not supported by [Plaintiff]'s treatment records that repeatedly document [his] symptoms to improve with his treatment regimen. [(Tr. 1525-26, 1544-45, 1547, 1553, 1585, 1589, 1594.)] At the hearing, [Plaintiff] did not testify to difficulty attending and completing tasks. Rather, he testified that he is disabled due to blackouts and difficulty controlling his tempter [sic]. [QMHP] Moy[e] failed to note [Plaintiff]'s blackout spells, and the assessed limitations regarding [his] social interaction are inconsistent with [his] treatment records. The record indicates that [Plaintiff] did well with group therapy. [(Tr. 1428-29.)] He actively participated in group discussions and denied psychological symptoms. In May of 2020, [Plaintiff] reported that he was grateful for the opportunity to socialize with his fellow veterans. [(Tr. 1491, 1499-1505, 1511, 1518-19, 1821, 1837, 1844-46.)[9]] The foregoing evidence supports a finding that [Plaintiff] has moderate mental limitations.

(Tr. 24 (internal citation to hearing testimony omitted) (emphasis added).) Plaintiff challenges that analysis by the ALJ on three grounds, none of which carries the day.

---

[9] Although the ALJ cited to pages 40 through 42 of Exhibit B6F (see Tr. 24; see also Tr. 1844-46), those pages do not appear to contain information supporting the ALJ's observations that Plaintiff "actively participated in group discussions and denied psychological symptoms" as well as reported gratitude "for the opportunity to socialize with his fellow veterans" (Tr. 24; see also Tr. 1844-46).

12

First, Plaintiff argues that, "contrary to the ALJ's finding, the lack of reference to blackouts in [QMHP] Moy[e]'s opinion does not constitute a deficiency in her assessment of [Plaintiff's] mental functioning." (Docket Entry 11 at 6 (citing Tr. 24).) In that regard, Plaintiff "notes that [QMHP] Moy[e]'s opinion clearly provides at the outset that her opinion is based on Plaintiff's *mental* diagnosis of [PTSD] (rather than Plaintiff's *physical* impairment of blackout spells)" (id. (citing Tr. 1865) (emphasis in original)), and "Plaintiff testified that he d[id] not know the cause of his blackouts" (id. (citing Tr. 42)).

That argument glosses over the fact that, if Plaintiff did not know the cause of his blackouts (see Tr. 42), but considered them disabling (see Tr. 41), then the blackouts certainly could have had a mental cause and thus held relevance to QMHP Moye's assessment of Plaintiff's mental functioning. (See Tr. 709 (reflecting Plaintiff's report to consultative psychological examiner Mark I. Salomon, MA (supervised by Dr. Charles Kronberg) that he suffered blackouts twice per day), 1799-1804 (documenting absence of blackout complaints to consultative medical examiner Zachary D. Seitz, PA-C).) Accordingly, the lack of any reference to Plaintiff's allegedly disabling blackout spells on the Mental Impairment Questionnaire completed by QMHP Moye diminishes the consistency of her opinions with Plaintiff's statements elsewhere in the record.

13

Next, Plaintiff challenges the ALJ's observation that Plaintiff's mental symptoms improved with treatment as a basis to discount QMHP Moye's opinions. (See Docket Entry 11 at 6 (citing Tr. 24).) According to Plaintiff, "there was ample probative evidence to support the limitations assessed by [QMHP] Moy[e] that the ALJ never considered in analyzing the persuasiveness of [her] opinion[s]." (Id. at 10.) In that regard, Plaintiff points to (1) a mental health treatment visit on September 23, 2019 (id. (referencing Tr. 1542-46)),[10] where a "mental status examination revealed fair insight, fair judgment, and fair impulse control" and resulted in "assess[ments of PTSD ], unspecified depressive disorder, [and] rule out unspecified psychotic disorder" (id. at 11 (citing Tr. 1545)); (2) a mental health telephone encounter on April 20, 2020, reflecting an "assess[ment of] adjustment disorder with depressed mood, personal history of suicide attempt, personal history of self-harm, and suicidal ideations" (id. (citing Tr. 1502)); and (3) a "Nexus Statement" completed by Lutricia Callair, LCSW, on July 13, 2021, on which she opined that "it [wa]s more likely than not that Plaintiff's [PTSD] was related to his military service" and noted that Plaintiff reported "recurring nightmares at a frequency [of] two to three times per week" (id. (citing Tr.

---

[10] The record reflects the actual date of that visit as September 19, 2019. (See Tr. 1542, 1546.)

14

1870)). For the following reasons, Plaintiff's arguments miss the mark.

As an initial matter, and contrary to Plaintiff's assertions that "the ALJ <u>never considered</u>" the evidence (<u>id.</u> at 10 (emphasis added); <u>see also</u> <u>id.</u> at 11 ("The ALJ <u>failed to consider</u> the aforementioned, probative evidence in assessing the supportability of [QMHP] Moy[e]'s opinion[s]." (emphasis added))), the ALJ expressly cited to <u>all three</u> pieces of evidence relied on by Plaintiff as supporting QMHP Moye's opinions. In the ALJ's analysis of QMHP Moye's opinions, the ALJ observed that, (1) "[Plaintiff] actively participated in group discussions and denied psychological symptoms" (Tr. 24 (citing, <u>inter alia</u>, <u>Tr. 1502</u> (page 90 of Exhibit B3F))), and (2) "[QMHP Moye's] opinion is not supported by [Plaintiff]'s treatment records that repeatedly document [his] symptoms to improve with his treatment regimen" (<u>id.</u> (citing, <u>inter alia</u>, <u>Tr. 1544-45</u> (pages 133 and 134 of Exhibit B3F))). Moreover, the ALJ later noted LCSW Callair's statement "that [Plaintiff's] PTSD related to time in-service[ and] . . . cause[d] recurrent nightmares . . . two to three times a week," but "d[id] not accord any evidentiary value to th[at] statement, as an opinion [wa]s not offered," and "Ms. Callair['s] statements [we]re based on [Plaintiff]'s report and [we]re of no

15

value in determining [Plaintiff]'s mental [RFC]" (Tr. 24 (citing Tr. 1870 (page 2 of Exhibit B8F))).[11]

Furthermore, and more significantly, the record pages relied on by Plaintiff actually support the ALJ's decision to find QMHP Moye's opinions unpersuasive (see Tr. 24). For example, the September 2019 mental health treatment note documents Plaintiff's statement that "[he was] doing pretty good right now" and "enjoying hobbies such as home repair/remodeling" (Tr. 1544), as well as that he appeared "calm" and "cooperative" with a normal, euthymic affect, and remained able to "attend[] to [the] examiner," and "to concentrate fully" with "no overt deficits" in memory (Tr. 1545). Similarly, the telephone encounter on April 20, 2020, reflects Plaintiff's "state[ment] that [he was] doing ok and not having any mental or physical issues with the current [Covid] pandemic." (Tr. 1502.) Although Plaintiff points to the diagnoses appearing at the end of that encounter (see Docket Entry 11 at 11 (citing Tr. 1502)), which include "[s]uicide [a]ttempt" and "self-harm" as well as "[s]uicidal [i]deations" (Tr. 1502), those conditions appear to constitute historical diagnoses, as they do not correspond to any

---

[11] Although the ALJ did not discuss LCSW Callair's statement in the same paragraph in which he analyzed QMHP Moye's opinions (see Tr. 24), the Court considers the ALJ's entire decision when reviewing for substantial evidence. See McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis).

16

contemporaneous reports by Plaintiff of suicidal ideation (let alone suicide attempts or self-harm) (see id.; see also Tr. 1501 (mental health telephone encounter dated April 27, 2020, including same suicide and self-harm diagnoses along with same statement that Plaintiff was "doing ok")).[12] Moreover, all of Plaintiff's other peer support telephone notes reflect only the diagnoses of "[a]nxiety disorder, unspecified" and/or "[a]djustment disorder with depressed mood" (Tr. 1479-82, 1488-96, 1498, 1503-04). With regard to LCSW Callair's statement that Plaintiff's PTSD "[m]ore likely than not related to" an "exposure" and an "incident" during his military service, and that "[Plaintiff] report[ed] recurring nightmares about they [sic] incident 2 to 3 times per week" (Tr. 1870 (emphasis added)), the ALJ appropriately discounted that statement as based on Plaintiff's subjective reports (see Tr. 24).[13] These records, along with the other evidence cited by the ALJ, confirm that substantial evidence supports the ALJ's decision to deem QMHP Moye's opinions unpersuasive.

Lastly, Plaintiff objects to the ALJ's reliance on Plaintiff's active participation in group therapy sessions as a reason for finding QMHP Moye's opinions unpersuasive. (See Docket Entry 11 at 6 (citing Tr. 24).) In Plaintiff's view, "[t]he ALJ failed to

---

[12] Indeed, none of Plaintiff's treatment records during the relevant period reflect any suicidal ideation, suicide attempts, or self-harm. (See Tr. 1340-1937.)

[13] The record does not contain any treatment records from LCSW Callair or from QMHP Moye.

17

build a narrative bridge explaining how Plaintiff's ability to successfully interact with others in a controlled, clinical, supportive setting (namely, group therapy) . . . in the context of interaction with a trusted mental health professional are [sic] indicative of an ability to engage in mental activities *in a work setting* on a regular and continuing basis." (Id. at 7 (citing Tr. 24) (emphasis in original).) Plaintiff points out that "language in the mental category of listed impairments" (id.) requires ALJs to "consider the evidence in light of the psychosocial supports and assistance that serve to reduce the demands placed on the individual" (id. at 8 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00)). That assertion falls short.

The ALJ's decision makes abundantly clear that she did not consider only Plaintiff's ability to actively participate in (and express gratitude about) group therapy to discount QMHP Moye's opinion that Plaintiff suffered "marked" limitation in several abilities relating to social interaction (Tr. 1866). For example, in assessing the paragraph B criteria at step three of the SEP, the ALJ provided the following rationale for finding only "moderate" limitation in interacting with others:

> In interacting with others, [Plaintiff] has moderate limitations. Here, [Plaintiff] alleged that he has difficulty engaging in social activities, getting along with others, and spending time in crowds. However, according to his statements, [he] is also able to <u>get along with others, shop, spend time with friends and family, take public transportation, and live with others</u>. Finally, the medical evidence shows that [Plaintiff] had

18

> a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments.

(Tr. 20 (citing hearing testimony and Tr. 563-81 (Function Reports of Plaintiff and his brother)) (emphasis added).) That analysis shows that the ALJ relied on <u>Plaintiff's own statements</u>, and those of his brother, regarding Plaintiff's ability to interact with others outside the setting of his mental health treatment.

Put simply, Plaintiff's first and only assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is affirmed, that Plaintiff's Motion for Judgment Reversing Decision of the Commissioner of Social Security (Docket Entry 10) is **DENIED,** that Defendant's Motion for Judgment (Docket Entry 15) is **GRANTED,** and that this action is **DISMISSED** with prejudice.

                                                /s/ L. Patrick Auld
                                                   **L. Patrick Auld**
                                     **United States Magistrate Judge**

September 14, 2023